# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 50186 | **DATE** | 9/30/2011 |
| **CASE TITLE** | Joyce A. Lewis vs. Blue Cross Blue Shield of Illinois | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, defendant's motion for summary judgment is granted. Judgment is entered in favor of defendant and against plaintiff on all counts. This case is terminated.

*Philip G. Reinhard*

■[ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Joyce A. Lewis, brings this action against her former employer, defendant, Healthcare Service Corporation, which operates through its Blue Cross and Blue Shield plans in Illinois. Plaintiff claims sex discrimination in violation of 42 U.S.C. § 2000e et seq. (Count I), age discrimination in violation of 29 U.S.C. § 620 et seq. (Count II) and retaliation (Count III). Defendant moves for summary judgment.

The following facts are taken from the LR56.1 statements of fact submitted by the parties. Because the facts are viewed most favorably to the plaintiff, in the few instances where facts are disputed, plaintiff's version of the facts is used.[1]

Plaintiff is a woman who was 55 years old at the time she retired from defendant on October 15, 2008. Plaintiff began working for defendant as a mailroom clerk in 1982 and, over time, moved into various sales and marketing positions. Terry Shook, a man, was plaintiff's direct supervisor from 2001 until plaintiff's retirement. Warren McCarty was Shook's supervisor. At least until December 11, 2006, plaintiff was a Sales Representative II[2] ("Rep II") during the time she reported to Shook. As a Rep II, plaintiff had annual sales goals. She did not meet these goals from 2003 to 2005. In 2003, she sold 1,350 cards versus her goal of 1,800. In 2004, she sold 695 cards versus a goal of 1400. In 2006, plaintiff exceeded her sales goals. In 2006, she obtained the Rockford Public Schools ("RPS") as a client. This was the largest sale of her career. Plaintiff was primarily responsible for preparing the proposal that led to obtaining business from RPS and McCarty made the final presentation to RPS. Shook was a representative of defendant's management at meetings with RPS.

In late 2006, McCarty decided to move plaintiff from her Sales Representative II role to a Combo Account/Sales Representative ("Combo") position which would pay her a higher salary. Although the Combo position offered a higher base salary and the same grade level as the Rep II position, her opportunities for commissions would be reduced. McCarty consulted Shook on this decision. McCarty and Shook believed that the new position would allow plaintiff to consistently meet her assigned goals and succeed in a role that matched her strengths. McCarty's goal in moving plaintiff to the Combo position was to find her a position within the company where she could be successful year in and year out.

On October 20, 2006, McCarty met with plaintiff and told her about the decision to move her to the Combo position. Plaintiff testified in her deposition that McCarty told her at this meeting that Bruce Hagshenas, a broker with Benefit Planning Services, an agency defendant had decided to do business with again, did not like to work with

women. On October 25, 2006, Shook sent out an email announcing plaintiff's upcoming move to the Combo position. That same day, plaintiff sent an email to Shannon Gouwens, a Senior Workforce Engagement Specialist stating plaintiff was unfairly being moved into another position that paid less. On November 17, 2006, plaintiff met with Gouwens, Shook, McCarty, and Nora Bliss, a Senior Manager in defendant's Workforce Engagement Human Resources Department. Plaintiff was told in this meeting that the change was not a demotion, that she would make a higher salary in her new position, and that her skills set matched up better with the new position. However, plaintiff had a lesser opportunity for earning commissions.

In late November 2006, plaintiff's former Rep II position was posted. Several candidates applied. Brian Cheney was selected. At the time Cheney was selected, the other two Rep II positions were held by women and Cheney's prior position as an Account Executive was filled by a woman.

On December 11, 2006, plaintiff started working in the Combo position. She remained at the same grade level as her former Rep II position. In the Combo position plaintiff was responsible for maintaining and servicing existing customers, including RPS, and developing new sales without brokers. She continued to work with two or three brokerages in the Rockford area and requested and was given several others. Plaintiff initially did well in the Combo position and experienced some benefits she had not enjoyed in the Rep II position. Her salary increased and she was allowed to work from home more often.

On September 26, 2007, plaintiff filed a charge with the EEOC alleging sex and age discrimination. No one at defendant ever said anything to her about the fact she had filed this charge. Shook gave plaintiff a good evaluation in February 2008, for calendar year 2007, after she filed this charge. Plaintiff made $121,260.23 in the Combo position in 2007. This was less than she made in 2006, but more than she had ever made in any other year of employment with defendant.

In June 2008, plaintiff called defendant's Compliance Hotline about concerns she had with Cheney's behavior. These concerns involved an expense report issue involving Cheney that predated plaintiff's move to the Combo position and an enrollment fee issue. She knew everything that was the basis for those complaints about Cheney for over a year before she reported them. She did not complain in this June 2008 call about sex or age discrimination. Plaintiff believes she was suspended in August 2008 in retaliation for those complaints about Cheney.

In August 2008, the RPS business was coming up for renewal. Carl Mowery was a consultant for RPS and Tom Hoffman was RPS's CFO. Mowery communicated to defendant in August 2008 that plaintiff needed to be replaced or that RPS would no longer be a customer of defendant. At this time, RPS was one of the three largest customers of defendant's Rockford office. RPS was one of the most important groups and the largest account plaintiff had ever worked on. It was a big piece of her business.

Mowery and Hoffman asked to meet with McCarty and did so on August 6, 2008. Mowery and Hoffman repeated that defendant had to replace plaintiff as RPS's account representative. This was an ultimatum connected to RPS's willingness to not only renew but also expand its business with defendant. RPS's concerns with plaintiff were based on her past customer service issues. Mowery sent an email to Shook and McCarty on August 12, 2008, in which he advised that defendant had won RPS's business conditioned upon several events "including replacement of [plaintiff] on [RPS's] account. Such replacement is desired as soon as reasonably possible." Neither Hagshenas nor his agency were involved with this RPS business that was coming up for renewal in August 2008.

McCarty and Shook contacted defendant's human resources department for advice on how to proceed. Chris Taggart was assigned to investigate. Based on his investigation, he concluded plaintiff should be suspended with pay for four days while he investigated and obtained a response from her. Shook suspended her at a meeting in late August 2008. She was told RPS had demanded her removal and was shown the writing from Mowery to that effect. She was presented with a notice of suspension which both she and Taggart signed on August 26, 2008. The notice of suspension warned plaintiff that failure to file a timely response or failure to comply with confidentiality obligations would be grounds for disciplinary action up to and including termination. Other than those warnings, she was never threatened with termination. During her deposition, plaintiff was asked if she had any knowledge of any salesperson at defendant who had a client write a letter like Mowery wrote about plaintiff for a client the size of RPS who had not been suspended or fired. Plaintiff answered "no." at some point, Taggart called plaintiff and offered to help find her another position in another department. Plaintiff declined this offer of assistance.

While out on suspension, plaintiff decided to retire as her age and years of service made her eligible to retire. The fact that RPS did not want to work with her played a role in her decision to retire. On September 5, 2008, she sent

**STATEMENT - OPINION**

Taggart an email and later met with him to inform him she was retiring. Plaintiff took a previously scheduled vacation from September 22, 2008 to October 1, 2008. She worked for two more weeks and retired on October 15, 2008. She was replaced in the Combo position by a woman, Jamie Brickweig. Plaintiff filed a second charge with the EEOC on December 31, 2008, alleging sex and age discrimination and retaliation.

Plaintiff's complaint claims sex and age discrimination and retaliation. The discrimination claims arise out of her transfer to the Combo position, her later suspension with pay from that position and her claimed constructive discharge. Plaintiff's brief in response to the summary judgment motion does not make any argument addressing the suspension, constructive discharge or retaliation claims.[3] "Perfunctory or undeveloped arguments are waived." Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005). Because plaintiff does not make any argument to support her claims as to the transfer, suspension or retaliation issues, defendant is entitled to summary judgment on these claims.

To survive summary judgment on her remaining claim (the transfer to the Combo position) plaintiff may proceed under either the direct or indirect method. Plaintiff acknowledges that she cannot proceed under the direct method. Under the indirect method, in order to survive summary judgment, plaintiff must show 1) she is a member of a protected class; 2) she was performing well enough to meet her employers legitimate expectations; 3) she suffered an adverse employment action; and 4) similarly situated employees not in a protected class were treated more favorably. If she establishes all four elements, then the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. If it does so, then plaintiff must demonstrate that the reasons offered were pretextual. Naik v. Boehringer Ingelheim Pharmaceuticals, Inc., 627 F.3d 596, 599-600 (7th Cir. 2010) (age); Weber v. Universities Research Assoc., Inc., 621 F.3d 589, 593 (7th Cir. 2010) (sex).

Plaintiff has not shown that the reason offered for her transfer to this position was a pretext. "The prima facie case and pretext inquiries often overlap" and the court "may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers a nondiscriminatory explanation for its employment decision." Benuzzi v. Bd. of Educ. of City of Chicago, 647 F.3d 652, 663 (7th Cir. 2011) (citations and quotation marks omitted). Defendant's reason for the transfer was that McCarty and Shook believed that the new position would allow plaintiff to consistently meet her assigned goals and succeed in a role that matched her strengths. McCarty thought the Combo position was a position within the company where plaintiff could be successful year in and year out. Plaintiff did not dispute these factual allegations so they are deemed admitted. LR56.1 (b) (3) (B). Having admitted these were the reasons for the transfer, plaintiff cannot simultaneously claim they were a lie.

For the foregoing reasons, defendant's motion for summary judgment is granted. Judgment is entered in favor of defendant and against plaintiff on all counts. This case is terminated.

.

---

1. Plaintiff's additional fact 5 is not considered because it is not supported by a citation to the record. Plaintiff's additional fact 1 cites to documents not in the record and is also not considered.

2. This position is also referred to in the record as "Sales Executive II."

3. The disputed facts portion of the brief does dispute some facts related to the suspension and her decision to retire (constructive discharge) but no argument is made from these disputed facts.